916 So.2d 882 (2005)
Andrea J. DeMELLO, Appellant,
v.
Joyce A. BUCKMAN, Appellee.
No. 4D03-3759.
District Court of Appeal of Florida, Fourth District.
November 9, 2005.
*884 Jay L. Kauffman and James A. Herb of Herb & Mednick, P.A., Boca Raton, for appellant.
Jay A. Schwartz and Vanessa D. Sloat of Sachs Sax Klein, Boca Raton, for appellee.
WARNER, J.
In this suit by one sister against another sister over the management of their deceased parents' inter vivos trusts, the trial court entered a final judgment removing one sister as trustee, awarding damages against her, and ordering the disposition of Connecticut property owned by the trust. We reverse the final judgment because several items of damage awarded were either unsupported by the evidence or not pled. However, the court did not abuse its discretion in removing the sister as trustee. As to the Connecticut property, we conclude that the court did not have jurisdiction to order its sale. Finally, we reverse the award of attorney's fees for reconsideration in light of our rulings.
Joyce Buckman and Andrea DeMello are sisters and sole beneficiaries of two trusts created by their parents, Jerome and Irene Adams. Except for the names of the settlers, the terms of the trusts are identical. Jerome passed away in 1998. In Jerome's trust, he designated Irene and DeMello as co-trustees. In 1999, Irene passed away. At that time, DeMello was left as the sole trustee of both trusts.
At the time of Irene's death, the assets in the trusts included: a home in Tamarac, Florida; commercial property in Connecticut which was rented to a business run by DeMello and her husband; a piece of vacant property in Cape Coral, Florida; jewelry, including a wedding set; stocks, bonds, and mutual funds; a Mercury Grand Marquis; and other items of personalty. The disputes in this case involve the car, the wedding rings, the Tamarac property, and the Connecticut property.
*885 The trust contained several provisions for distribution upon the death of the grantors. It first provided that upon the death of the parents, the trustee, DeMello, should distribute the Connecticut property to herself, provided that she pay Buckman one-half of its value upon prescribed terms. If the sisters could not agree on the terms of this allocation, then the property was to be distributed to the two sisters. Each trust agreement distributed $15,000 to DeMello, with no offsetting distribution to Buckman. After these distributions, the remaining trust assets were to be distributed in equal shares to the sisters.
Buckman and DeMello clashed from the beginning of the administration of the trust. Buckman complained that DeMello did not make distributions of trust assets or provide accountings to Buckman of the trust administration. The sisters disagreed over the value of various properties. Buckman filed suit in 2001, claiming that DeMello breached her fiduciary duty and caused her damage. She later amended the complaint to request DeMello's removal as trustee for maladministration.
At the trial of the action, Buckman claimed that in failing to act impartially, DeMello breached her fiduciary duty by improperly valuing the vehicle and a wedding ring set, selling the Tamarac property for less than its worth, engaging in self-dealing with the Connecticut property, failing to terminate the trust within a reasonable time, and making improper expense payments from the trust. The trial court found that DeMello breached her fiduciary duty and awarded $76,457.41 in damages. This figure was derived from the following: 1) the difference in value of the vehicle Buckman took from the estate and the value Buckman asserted it was worth; 2) the difference in value of the wedding ring set between what Buckman contended was the fair market value and the estate value; 3) the difference in value between the sale price of the Tamarac property and its fair market value; 4) lost mortgage payments on the Connecticut property had DeMello purchased the property in accordance with the terms of the trust; 5) foregone interest which would have been earned on the down payment that DeMello should have given Buckman on the Connecticut property; 6) foregone investment income that Buckman could have earned on her portion of the trust assets had they been distributed after a reasonable time; and 7) expenses improperly paid from the trust. In addition, the court ordered the Connecticut property to be transferred to the sisters in individual shares, and then ordered it sold, giving DeMello an opportunity to purchase Buckman's share for $150,000 cash. Finally, the court awarded attorney's fees and costs to Buckman. DeMello appeals and seeks reversal of all aspects of the final judgment.

Breach of Fiduciary Duty
DeMello contends that there was no evidence of any breach of fiduciary duty to support an award of damages or removal of her as trustee.[1] Having reviewed the entire record, we disagree. There was evidence that DeMello failed to distribute assets and terminate the trust in a timely *886 fashion and that this failure was the result of her holding the trust open to benefit her and her husband, particularly with respect to the disposition of the Connecticut property. Although the trust permitted her to purchase property from the trust, the court concluded from the evidence that decisions she made with respect to the administration of the trust and disposition of its assets were based upon her personal interests. Furthermore, there was also evidence that DeMello used the trust to pay expenses that should have been paid by her business. The trial court did not abuse its discretion in concluding that DeMello breached her fiduciary duty and removing her as trustee.

Damages
DeMello challenges the award of all items of damages. We reverse as to each of the other contested items of damage, except the $5,000 awarded on the vehicle and some of the expenses paid from the trust.

1) Jewelry
After Irene's death, Buckman and DeMello specified the pieces of their mother's jewelry that they wanted to buy. DeMello offered the wedding set to Buckman for $14,000. Buckman declined the offer and suggested that they sell it. DeMello responded that she would get everything appraised and then they would discuss the sale. DeMello obtained an estate appraisal of the wedding set for $6,325 and purchased it herself. Buckman objected, believing that the jewelry was worth $14,000. DeMello obtained two other appraisals, both less than the first. DeMello also offered Buckman the wedding set at the $6,325 value, but Buckman refused. In her suit, Buckman claimed that DeMello should have paid the $14,000 value and therefore Buckman was damaged by the difference between the appraised value and the $14,000 value, or $7,675, the award of the court. At trial, Buckman presented no evidence that the value of the wedding ring set was $14,000. Because there was no evidence that the value of the ring set exceeded the amount DeMello paid the trust for the rings, Buckman failed to prove any damage as a result of DeMello's actions. See George Hunt, Inc. v. Dorsey Young Constr., Inc., 385 So.2d 732, 733 (Fla. 4th DCA 1980) ("evidence as to the amount of damages cannot be based on speculation or conjecture, but must be proven with certainty").[2]

2) Tamarac Property
Article XII(B) of the trusts provides DeMello with the power:
To sell (and to grant options for the sale of) any real or personal property at public or private sale both within and without Florida, without order of any Court, for such prices and upon such terms, including the granting of a purchase money mortgage or purchase money security interest (with or without subordination) for any part or all of the purchased price, as Trustee may think proper, without liability on the purchasers to see to the application of the purchase money.
(Emphasis supplied).
The court has a limited role in supervising the exercise of the trustee's discretion. As stated in Scott on Trusts:
[T]he court will not control [a trustee's] exercise of [discretion] as long as *887 he does not exceed the limits of the discretion conferred upon him. The court will not substitute its own judgment for his. Even where the trustee has discretion, however, the court will not permit him to abuse the discretion. This ordinarily means that so long as he acts not only in good faith and from proper motives, but also within the bounds of a reasonable judgment, the court will not interfere; but the court will interfere when he acts outside the bounds of a reasonable judgment. In other words, although there is a field, often a wide field, within which the trustee may determine whether to act or not and when and how to act, beyond that field the court will control him. How wide that field is depends upon the terms of the trust, the nature of the power, and all the circumstances.
(Footnote omitted). 3 Austin Wakeman Scott & William Franklin Fratcher, THE LAW OF TRUSTS § 187 (4th ed. 1988). In this case, DeMello as trustee did not cross the bounds of reasonable judgment in light of the broad discretion placed with her by the trust instrument.
The Tamarac house was appraised at a fair market value of $99,000. DeMello offered to purchase Buckman's share less the amount a realtor would charge if the property had been listed, but Buckman rejected the offer. At some point in time, a water pipe broke and damaged the garage and part of the kitchen. Buckman and DeMello decided to sell the house, and DeMello decided to have the house inspected. The inspector's report stated that the inspector did not go in the attic or climb on top of the roof, but he believed that the roof had a leak, and fixing it would cost approximately $10,000. The inspector's report was admitted at trial. DeMello testified that the estate attorney advised her to have the house repaired and then give it to a broker to sell at $99,000.
Rather than list the property with a real estate broker, DeMello entered into a contract with a neighbor to sell the house for $89,000 in as-is condition. Buckman claimed that DeMello breached her fiduciary duty by selling the house for less than its fair market value, and the court awarded her $5,000, or one-half of the $10,000 difference between the appraisal and the selling price.
Given the discretion placed on DeMello as trustee to sell trust property for such prices as she may deem proper, we conclude that the court erred in finding that DeMello breached her fiduciary duty in selling the home for $89,000, instead of $99,000. DeMello had been informed of repairs needed to the home, and there was no evidence presented by Buckman to discredit the evidence presented by DeMello on this issue. Moreover, had DeMello listed the property, the trust would have paid a real estate commission which would have reduced the amount the trust received.
There was no evidence that the $89,000 sale under the circumstances was unreasonable. The court erred in concluding that DeMello breached a fiduciary duty causing Buckman damage.

3) Connecticut Property
The Connecticut commercial property is the most highly contested and problematic asset in the trust. About twenty years before his death, the father sold his company, which was the only tenant of the Connecticut property, to DeMello and her husband who continued to run the company. The company paid rent for the use of the premises. Because of her interest in the company, the trust distributed the property to DeMello on the condition that she buy out Buckman's share. Specifically, the provision in the trusts regarding this property, provides in relevant part:

*888 Article VIII RESIDUARY TRUST
C. Upon the death of Grantor's spouse (or at Grantor's death if Grantor's spouse predeceases Grantor) the Trustee shall distribute all right, title and interest in real property located at 652 Oakwood Avenue, West Hartford, Connecticut to Grantor's Daughter, ANDREA JEAN DeMELLO, per stirpes on the sole condition that ANDREA JEAN DeMELLO purchase from and pay over to Grantor's Daughter, JOYCE ANN BUCKMAN, an amount equal to one-half (1/2) the fair market value of said property. ANDREA JEAN DeMELLO shall have the option and right to give a mortgage to JOYCE ANN BUCKMAN for up to eighty (80%) percent of the fair market value of said property at two (2) percentage points below the average bank loan rates for such loans then existing, for a term not to exceed fifteen (15) years. If Grantor's said Daughters are unable to determine the fair market value of such property, Trustee shall employ an independent appraiser to determine the valuation. The valuation of such appraiser shall be conclusive on all parties. If ANDREA JEAN DeMELLO fails to purchase the property located at 652 Oakwood Avenue, West Hartford, Connecticut on the terms and conditions hereinbefore set forth, then all right, title, and interest in said property shall be distributed to Grantor's Daughters, ANDREA JEAN DeMELLO and JOYCE ANN BUCKMAN.
The sisters unsuccessfully negotiated for the sale of Buckman's interest in the property to DeMello. Buckman rejected DeMello's first appraisal and another appraisal was obtained. Because the appraisal recommended environmental testing to assess possible pollution to the property which would decrease its value, DeMello sought an environmental report and actually obtained three tests. All this took considerable time. In addition, DeMello and Buckman could not agree on the meaning of the trust provisions with respect to the size of the mortgage which Buckman was required to accept from DeMello. Ultimately, Buckman demanded that the property be titled in both of their names.
Buckman claimed that DeMello breached her fiduciary duty by self-dealing and failing to complete the purchase of Buckman's interest in the property within a reasonable amount of time. The court awarded three items of damage to Buckman: (1) mortgage payments not received in the amount of $33,832.89; (2) foregone investment income on mortgage down payment not received in the amount of $3,928.50; and (3) foregone investment income on other mortgage payments not received in the amount of $821.88. Even if we were to decide that these were compensable items of damage, which we do not decide, none of these items of damage were specially pleaded in the complaint, and all of them constitute items of special damage. Therefore, Buckman is not entitled to recover these items of damage.
In Precision Tune Auto Care, Inc. v. Radcliffe, 804 So.2d 1287, 1292 (Fla. 4th DCA 2002), we said with respect to special damages:
Rule 1.120(g) requires all special damages to be pled with specificity. Special damages are considered to be the natural but not the necessary result of an alleged wrong or breach of contract. In other words, they are such damages as do not follow by implication of law merely upon proof of the breach. On the other hand, general damages are those which the law presumes actually and necessarily result from the alleged *889 breach or wrong. Augustine v. S. Bell Tel. & Tel. Co., 91 So.2d 320, 323 (Fla. 1956).
. . .
Evidence of special damages is inadmissible if those damages are not pled in the complaint. See Bialkowicz v. Pan Am. Condo. No. 3, Inc., 215 So.2d 767, 770 (Fla. 3d DCA 1968). Moreover, it is error to award damages on claims that are outside of the pleadings. See Hooters of Am., Inc. v. Carolina Wings, Inc., 655 So.2d 1231, 1233 (Fla. 1st DCA 1995).
None of the damages involving the Connecticut property were specially pleaded in the complaint; nor did they constitute general damages arising as the necessary result of the wrongs. The purchase of the Connecticut property was delayed, but the trust provisions did not require DeMello to purchase the property at all, so Buckman did not have an enforceable right to secure the mortgage from her sister. Even if DeMello had elected to purchase this property, she could have paid Buckman cash for her share of the proceeds. And the loss of investment income is a special damage. See Bothmann v. Harrington, 458 So.2d 1163, 1170 (Fla. 3d DCA 1984). Therefore, the court erred in awarding Buckman the Connecticut property damages.

4) Lost Investment Income on Undistributed Trust Assets
Because Buckman failed to plead this special damage, the trial court erred in awarding $18,301 in lost investment income on undistributed trust assets. See Precision, 804 So.2d at 1292. Moreover, if the trust assets were not distributed, then the trust was investing its assets. In fact the amount earned by the trust in income on the assets was close to what was claimed by Buckman. Therefore, the court erred in awarding this item of damage.

5) Payment of Improper Expenses from Trust Assets
The court awarded damages to Buckman for her share of trust payment of expenses for DeMello's benefit. These included the fees for environmental testing of the Connecticut property as well as the taxes, insurance, and some repairs on the property. With respect to the environmental testing report fee, there was evidence that this was a benefit to DeMello personally and not a proper trust expenditure because it could only serve to lower the value of the Connecticut property, which would benefit DeMello and not the trust. With respect to the taxes, insurance, and repairs paid on the Connecticut property, Buckman presented evidence that these were expenses paid by DeMello's business as part of its rental obligation. After the parents died, DeMello insisted that the trust pay these expenses. DeMello could be charged with improperly paying from the trust what should have been her company's obligations. The court's ruling with respect to these expenses was not an abuse of discretion.
The court also awarded as damages the trust's payment of legal fees incurred by the trustee in the administration of the trust prior to this litigation. There was no evidence that these were improper trust expenditures, and the amount was within that authorized pursuant to section 737.2041, Florida Statutes. Buckman can point only to her own statement that DeMello was paying her individual attorney's fees as well as the trust's attorney's fees out of the trust, but there was no evidence that the fees awarded as damages were paid to anyone but the trust attorney for his work for the trust.
*890 Further, it was error to determine that trust payment of the fee of the CPA who prepared the tax return for the trust was improper. Section 737.402(2)(u), Florida Statutes, obligates the trustee to file tax returns and pay taxes on the trust. Additionally, section 737.402(2)(y), Florida Statutes, authorizes the trustee to hire accountants. Buckman did not contest the tax returns or the accountant's preparation of them in the trial court. There was no evidence presented to justify this item of damage.
Finally, the court awarded miscellaneous costs for which the trust paid, such as postage and the like, as damages to Buckman. There was no testimony as to why these were not proper trust expenses. Therefore, the court erred. However, as to the $360 fee that DeMello took as trustee, we affirm as the court found that DeMello had breached her fiduciary duties.

Court's Orders Respecting Connecticut Property
To resolve the issues between the sisters as to the Connecticut property, the court provided:
8. The Court hereby orders a lis pendens to be placed upon the Connecticut property by Plaintiff.
9. Pursuant to the trust provisions the Connecticut property shall be titled in both the Plaintiff's and Defendant's names and placed on the market for sale. Plaintiff as trustee shall be charged with the responsibility of selling the property. In the event Defendant wishes to purchase the property, she shall pay to the Plaintiff the sum of $150,000.00 in cash (no mortgage), without any credit. In the event Defendant purchases the building from Plaintiff in accordance with this Court's Final Judgment and Defendant's interests in the trusts are insufficient to pay Plaintiff's damages, professional fees and costs as awarded by this Court and Defendant is unable to pay any balance, the Connecticut property shall be mortgaged and/or sold to satisfy all judgments awarded to Plaintiff.
DeMello maintains that the court had no jurisdiction to order a lis pendens or the sale of the Connecticut property. We agree with DeMello that the court did not have the authority to order the sale of the property or impose a lis pendens on the Connecticut property. See Polkowski v. Polkowski, 854 So.2d 286 (Fla. 4th DCA 2003), and Farley v. Farley, 790 So.2d 574 (Fla. 4th DCA 2001).
Because we are reversing on this ground, we also note that the order with respect to the disposition of the property is itself contrary to the trust provisions. First, the court ordered the property to be titled in both sisters' names, which was in accordance with the trust when DeMello failed to purchase.[3] But then the court ordered the trustee to sell the property. Once the property is distributed to the sisters in undivided interests, the trust terminates as to that property, and the trustee no longer has power to sell; nor does DeMello have the opportunity to purchase Buckman's interest. It is an unfortunate fact that in this circumstance the sisters will either have to come to some agreement as to their continued ownership, or one of them may seek partition in Connecticut. If the trial court intended to permit DeMello one last chance to purchase the property, then the court should not have ordered its transfer to the sisters. *891 The court may reconsider this issue upon remand.

Attorney's Fees
Because we are reversing on multiple issues, we must also reverse the order awarding attorney's fees for reconsideration of whether Buckman prevailed on the significant litigated issues. See Mulato v. Mulato, 734 So.2d 477, 478 (Fla. 4th DCA 1999). The award of costs will also be affected by our rulings herein. Although Buckman continues to prevail on major issues, much of the trial testimony dealt with damages to Buckman which were not pled, resulting in their reversal. After the trial court reconsiders its judgment in light of this reversal, it should then redetermine the attorney's fees and costs issues.

Signing of Proposed Final Judgment
Finally, DeMello seeks to reverse the entire judgment, because the trial court signed the proposed final judgment that was submitted by Buckman without change, arguing that this practice is contrary to Perlow v. Berg-Perlow, 875 So.2d 383 (Fla.2004). In Perlow, the supreme court stated:
While a trial judge may request a proposed final judgment from either or both parties, the opposing party must be given an opportunity to comment or object prior to entry of an order by the court. Moreover, the better practice would be for the trial judge to make some pronouncements on the record of his or her findings and conclusions in order to give guidance for preparation of the proposed final judgment.
875 So.2d at 390. In this case, the trial court gave each side the opportunity to submit proposed final judgments and signed Buckman's proposal two weeks later. Thus, the requirements of Perlow were met, and the signing of Buckman's proposal does not provide an independent reason for reversal of the final judgment.

Conclusion
Based upon the foregoing, we affirm the final judgment finding that DeMello breached her fiduciary duty and removing her as trustee. We reverse the award for the jewelry, Tamarac house, Connecticut property, and loss of investment income on the undistributed trust property. We also reverse the damages awarded consisting of the trust attorney's fees, accounting fees, and miscellaneous expenses. We affirm the awards for the vehicle, and the expenses paid by the trust for the Connecticut property, as well as the trustee fee. The order respecting the disposition of the Connecticut property is reversed for lack of jurisdiction to order its sale, and the order is remanded for reconsideration in accordance with this opinion. Because of the reversal of a substantial portion of the final judgment, we also reverse the order of attorney's fees and costs for reconsideration.
KLEIN and TAYLOR, JJ., concur.
NOTES
[1] DeMello also contends that the trial court erred in refusing to admit the testimony of the trust attorney regarding his advice concerning trust matters, because "advice of counsel" was not pled as an affirmative defense. We have reviewed the record on this issue and conclude that the attorney was permitted to testify to most of his actual advice to DeMello and his dealings with the parties. The few questions to which the court sustained objection were covered in DeMello's testimony. Even if it was error to sustain the objection to the attorney's testimony, we cannot conclude that this error constitutes a miscarriage of justice. See § 59.041.
[2] Even if there had been evidence, it appears to us that Buckman would have been entitled to only one-half of the amount. If DeMello had owed $7,675 to the trust for the purchase of the ring, then Buckman's share would have been one-half of that amount, as Buckman was entitled to only one-half of the trust assets.
[3] An order requiring the trustee to transfer the property to the two sisters would not require in rem jurisdiction. See Farley, 790 So.2d at 575, n. 1.